A.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LINDA M. MEHAYLO | : | |
| | : | |
| VS. | : | NO. 3:19cv2002(VAB) |
| | : | |
| DANIEL P. LORIS, | : | |
| OFFICER DOMINGUEZ, | : | |
| and OFFICER DEANGELO | : | MARCH 29, 2022 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT DeANGELO'S
MOTION FOR SUMMARY JUDGMENT**

**I.     FACTUAL BACKGROUND**

LInda Mehaylo is a diminutive person who was a 55 year old insurance sales person in February, 2017, at the time she encountered the defendants. (Ex. 1,  plaintiff's Interrogatory responses Nos.1, 2, and Ex. 4, plaintiff's deposition, p. 94 [transcript page numbers])  She was involved in a minor motor vehicle accident on February 15,  when she rear-ended Haseem Senan ("Senan") on Route 34 in Derby at about 7:30 P. M.  She exchanged identification information with the driver, although it appears that she did not provide her insurance information. (Ex. 2 , Senan deposition, p. 9)  In her deposition, Senan stated that she discussed the accident with the plaintiff for

about eight or nine minutes, then called the police. (Id. p. 18)  The plaintiff left the scene before any officer arrived, and she drove home to 89 Shelton Avenue in Shelton. Defendant DeAngelo arrived at the accident location; he spoke with Senan and she then drove her car to Derby Police Station and met further with DeAngelo to complete a statement. (Ex. 2, p. 10, line 17) The Derby police contacted the Shelton police department, since Senan had Linda's address, and several Shelton officers proceeded to the plaintiff's residence.  Defendant DeAngelo completed Senan's statement with her at 8:24 p. m. and he drove to 89 Shelton Ave. to meet with the plaintiff. (Ex. 3, Senan statement, "completed time" block) DeAngelo intended to arrest the plaintiff for a misdemeanor, evading responsibility. His other option would have been to give her an appearance ticket.

    Linda Mehaylo became aware of lights outside of her house and she was alarmed at the number of police cars. (Ex. 4, pl. dep. transcript, p. 54) She agreed to speak with defendant DeAngelo through the glass storm door of her house. (Ex. 4, p. 87, lines 12-18)   She opened her wood front door; DeAngelo opened the storm door and grabbed her. (Ex. 4, p. dep. p. 84, lines 21-25, p. 85, lines 1-8, p. 89, lines 17-25 and p. 90, lines1-9) She was alarmed and pulled back. (Id. p. 83) Two other Shelton officers (Loris and Dominguez) took the plaintiff's arms and assisted DeAngelo in hand-cuffing the plaintiff and removing

her from her property, which involved picking her up, since she was not cooperating. (Ex. 5, DeAngelo incident report, p. 4) The plaintiff yelled that she had incontinence problems, and she unintentionally urinated on defendant Dominguez. (Ex. 4, p. 85, lines 19-25, p. 86, lines 1-15) The plaintiff was thrown roughly by the defendants into DeAngelo's vehicle; she hit her head on the back of the center console. (Id. p. 100, lines 17-24, pps. 101-2) Her booking photo shows that she has an emerging large bruise around her right eye. (Ex. 7) Defendant DeAngelo did not speak to Linda when he opened the storm door. (Ex. 4, (Ex. 1, p. 84, lines 21-25, p. 85, lines 1-8, p. 89, lines 17-25 and p. 90, lines 1-9) DeAngelo did not request any assistance from the female Shelton officer on the scene before he grabbed the plaintiff from her front entrance. There were no exigent circumstances which would explain DeAngelo's and the other defendants' conduct. The plaintiff suffered a serious head injury as a result of the incident. (Ex. 1, Interr. No. 5, Ex.4, p. 102)

Linda Mehaylo then filed this action for excessive force in violation of her Fourth Amendment rights.

## II.     STANDARD FOR SUMMARY JUDGMENT

The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.] Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc., 310 F.3d at 286. The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. Mar. of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). In deciding a motion for summary judgment, "a Court is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." World Trade Ctr. Prop., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 166 (2d Cir. 2003). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be

denied." Am. Home Assur. Co. v. Hapag Lloyd Container Line, 446 F.3d 313, 315 (2d Cir. 2006).

The Second Circuit has emphasized that there is a "need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent," Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir.2008). The Second Circuit has also stressed the importance of leaving credibility decisions to the jury on issues of material fact. Kaytor v. Electric Boat Corporation, 609 F.3d 537 (2d Cir. 2010).

**III.   ARGUMENT**

    A.  Excessive Force

"[W]here there is no need for force, any force used is constitutionally unreasonable." Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000).  Likewise, in every force case, the seriousness of the offense under investigation must be compared to the amount of force used in determining whether the force is unreasonable under those unique facts.  Thus, when police responding to a neighbor's complaint had reason to believe that their victim was targeting them with a laser-sighted firearm, but nothing more and no shots were fired, there was no indication that he had used a gun recently, it was known that he suffered from psychological problems, and the officers had no knowledge of any history of violence, it was unreasonable to activate an

emergency response team, surround the man's house, break his windows and fire teargas inside.  His estate was permitted to sue for unreasonable force on the theory that his ensuing fatal heart attack was the proximate result of the force in question.  Estate of Smith v. Marasco, 318 F.3d 497, 516-17 (3rd Cir. 2003).

Some examples of excessive force follow. Transporting handcuffed prisoners without safety restraints in the metal-lined interior of a police van has been held actionable as unreasonable force, Franklin v. City of Chicago, 102 F.R.D. 944 (N.D. Ill. 1984); and similarly in the back of a police cruiser where the arrestee was tossed around the back of the car during an unnecessarily rapid drive to headquarters.  Kostrezewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001).

Handcuffing an arrestee more tightly than necessary is actionable as unreasonable force.  Martin v. Heideman, 106 F.3d 1308, 1312-13 (6th Cir. 1997); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993); Payne v. Pauley, 337 F.3d 767, 780 (7th Cir. 2003); Meredith v. Erath, 342 F.3d 1057 (9th Cir. 2003); LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Alexander v. County of Los Angeles, 64 F.3d 1315 (9th Cir. 1995); Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Bauer v. Norris, 713 F.2d 408, 410-13 (8th Cir. 1983); Kostrzewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001).  One violent poke and push during a traffic stop is sufficient to establish a cause of action for unreasonable force.  Lanigan

v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997). A plaintiff stated a sufficient claim of unreasonable force in a complaint which alleged that he was detained for four hours, painfully handcuffed and denied access to a bathroom during the search of a house he shared with the subject of a criminal investigation. Heitschmidt v. City of Houston, 161 F.3d 834 (5th Cir. 1998). Holding a prisoner on the ground by placing a knee heavily on his back, if unnecessary and it causes injury, can be unreasonable. LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000). Failure to afford a pepper-sprayed arrestee a timely opportunity to wash off the substance, causing it to remain on his face for 20-30 minutes, was unreasonable force. LaLonde, *supra*, at 960-61.

"As we have repeatedly said, whether the force used to effect an arrest is reasonable 'is ordinarily a question of fact for the jury.' Liston v. County of Riverside, 120 F.3d 965, 976 n. 10 (9th Cir. 1997)....Although excessive force cases can be decided as a matter of law, they rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific....It is a test that escapes 'mechanical application' and 'requires careful attention to the facts and circumstances of each particular case,' Graham, 490 U.S. at 396, and thus naturally favors jury resolution." Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1198 (9th Cir. 2000), vacated on other grounds, 122 S. Ct. 24 (2001). *See* Mickle v. Morin, 297 F.3d 114 (2nd Cir. 2002). On

reconsideration, the Ninth Circuit reaffirmed its earlier holding and held specifically that the use of pepper spray against nonviolent protestors as a means of forcing them to unchain themselves from a protest site to which they had annexed themselves, accompanied by a refusal to wash out the eyes of the victims, was clearly unreasonable force.  276 F.3d 1125, 1130 (9th Cir. 2002).

When a police officer slapped a 13-year-old boy he had arrested for operating a motorcycle without a license, the court held the slap was unreasonable force as a matter of law.  Courville v. Town of Barre, 818 F. Supp. 23 (D. Mass. 1993).  See also Armao v. American Honda Motor Co., 917 F. Supp. 142, 144 (D. Conn. 1966), holding that an arrestee's testimony that the arresting officer subjected him to "rough treatment" presented a triable issue of unreasonable force.  When a deputy sheriff, arresting the father of a ten-year-old girl in the family home, grabbed the girl by the arm and dragged her into another room for questioning, causing what her physician described as "mild soft tissue injury," the Fifth Circuit held that the child was in custody as a result and a jury question was presented whether the force used was unreasonable.  Ikerd v. Blair, 101 F.3d 430 (5th Cir. 1996).  See Mayard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997) (slapping a handcuffed prisoner).  In short, "the extent of the injury inflicted" is not a crucial factor in determining whether the amount of force used in a particular case was unreasonable.  Bass v. Robinson, 167 F.3d 1041,

1046 fn. 1 (6th Cir. 1999).  Although the severity of the injury may be considered by a jury in deciding whether the force used was unreasonable, the absence of serious injury is not a bar to recovery in such a case.  Bastien v. Goddard, 279 F.3d 10, 14-15 (1st Cir. 2002).

Unnecessarily tightening handcuffs as a punitive measure for verbal abuse of the arresting officer, accompanied by unnecessarily confining the prisoner in an uncomfortable position can constitute objectively unreasonable force.  Kerman v. City of New York, 261 F.3d 229, 239 (2nd Cir. 2001).

Whether the force used in any case is unreasonable must almost always be determined by a jury and not by a court on summary judgment.  "Reasonableness under the Fourth Amendment resembles tort law in its attention to how a specific, concrete circumstance should affect an officer's judgment.  This sensitivity to context suggests that regardless of whether objective reasonableness invokes a different and heightened standard from negligence, reasonableness under the Fourth Amendment should frequently remain a question for the jury.  To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared."  Abraham v. Raso, 183 F.3d 279, 289-90 (3rd Cir. 1999).

Although the seriousness of the injury sustained may be a relevant factor for the jury to consider in determining whether the force used was unreasonable under all the circumstances, serious injury is not an essential element of an unreasonable force case.  *E.g.*, Holmes v. City of Massillon, Ohio, 78 F.3d 1041 (6th Cir. 1996) ($50,000 awarded for bruised finger caused when booking officer forcibly removed arrestee's wedding ring); Wilks v. Reyes, 5 F.3d 412, 416 (9th Cir. 1993); Bender v. Brumley, 1 F.3d 271 (5th Cir. 1994); Riley v. Dorton, 93 F.3d 113 (4th Cir. 1996); Gray v. Spillman, 925 F.2d 90, 93-95 (4th Cir. 1991). Discussing the doctrine of *de minimis non curat lex* in Hessel v. O'Hearn, 977 F.2d 299 (7th Cir. 1992), Judge Posner noted that even the theft of a can of soda pop by a police officer is actionable under Section 1983 because there is no jurisdictional amount in such cases and the injury, although small, can readily be determined.

In this particular case, a small, frightened middle aged woman was man-handled and roughly thrown into the back of a police car after the defendants DeAngelo unreasonably escalated the encounter. A female officer was present at the scene who could have been called upon to speak with the plaintiff; she was assigned to "traffic duty". (Ex. 6, Chapman Use of Force report)

  B. <u>Qualified Immunity</u>

Any claim of qualified immunity is defeated by the presence of disputed issues of material fact, which are ubiquitous in this case. <u>Rohman v. New York City Transit Authority</u>, 215 F.3d 208, 214 (2nd Cir. 2000); <u>Castro v. United States</u>, 34 F.3d 106 (2nd Cir. 1994); <u>Mays v. Mahoney</u>, 23 F.3d 660 (2nd Cir. 1994); <u>Golino v. City of New Haven</u>, 950 F.2d 864 (2nd Cir. 1991); <u>DiMarco v. Rome Hosp. & Murphy Memorial Hosp.</u>, 952 F.2d 661 (2nd Cir. 1992); <u>Posr v. Doherty</u>, 944 F.2d 91 (2nd Cir. 1991); <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880 (2nd Cir. 1991).

**IV.** **CONCLUSION**

The plaintiff respectfully requests that the Court deny defendant DeAngelo's Motion for Summary Judgment for the reasons set forth above.

        THE PLAINTIFF

        BY:   */s/ ct09444*
          KATRENA ENGSTROM
          51 Elm Street
          New Haven, CT 06510
          203.562.9931
          Fax: 203.776.9494
          Kengstrom@johnrwilliams.com

CERTIFICATION OF SERVICE

On the date above stated, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                              /s/  ct09444
                          KATRENA ENGSTROM