**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LINDA M. MEHAYLO,<br>    *Plaintiff,*<br><br>         v.<br><br>DANIEL P. LORIS,<br>OFFICER DOMINGUEZ, AND<br>OFFICER DEANGELO<br>    *Defendants.* | No. 3:19-cv-2002 (VAB) |

**RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Linda M. Mehaylo ("Plaintiff" or "Ms. Mehaylo") sued Shelton Police Officers Loris ("Officer Loris") and Dominguez ("Officer Dominguez") and Derby Police Officer DeAngelo ("Officer DeAngelo") (collectively, "Defendants") alleging excessive force in violation of the Fourth Amendment and state law assault and battery claims based on Defendants alleged conduct during Ms. Mehaylo's arrest on February 15, 2017. Compl. ¶¶ 4–11, ECF No. 1 (Dec. 23, 2019) ("Compl.").

Officer Dominguez moved for summary judgment, *see* Def. Officer DeAngelo's Mot. for Summ. J., ECF No. 46 (Mar. 8, 2022) ("DeAngelo Mot."), and Officers' Loris and Dominguez jointly moved for summary judgment, *see* Mot. for Summ. J., ECF No. 47 (Mar. 11, 2022) ("Loris and Dominguez Mot."), arguing all claims should be dismissed.

For the reasons explained below, Officers' Loris and Dominguez's motion for summary judgment is **DENIED.**

Additionally, Officer DeAngelo's motion for summary judgment is **DENIED**.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Factual Background[1]**

On February 15, 2017, after 7:30 p.m., Ms. Mehaylo was driving approximately 20 miles per hour when she collided with Naseen Senan ("Ms. Senan") at a stop light. *See* Pl.'s Rule 56(a)(2) Statement in Resp. to Def. DeAngelo ¶ 1, ECF No. 51 ("Pl.'s First Statement of Facts"); Pl.'s Rule 56(a)(2) Statement in Resp. to Defs.' Loris and Dominguez ¶ 3, ECF No. 57 ("Pl.'s Second Statement of Facts"); Local Rule 56(a)(1) Statement of Material Facts Not in Dispute ¶ 1, ECF No. 46-2 ("DeAngelo Statement of Facts"); Local Rule 56(a)1 Statement in Supp. of Mot. for Summ. J. ¶ 3, ECF No. 47-2 ("Loris and Dominguez Statement of Facts").

Ms. Mehaylo stated that she had taken her eyes off the road for a moment while she reached for a French fry and failed to stop in time. DeAngelo Statement of Facts ¶ 2; Pl.'s First Statement of Facts ¶ 1; Ex. 4 to Pl.'s First Statement of Facts at 40:18–41:5, ECF No. 51-1 ("Ms. Mehaylo Dep.").

After the impact, Ms. Mehaylo and Ms. Senan got out of their respective cars to discuss the accident. DeAngelo Statement of Facts ¶ 3; Pl's First Statement of Facts ¶ 1. Ms. Senan took a picture of Ms. Mehaylo's license plate, and Ms. Senan and Ms. Mehaylo spoke for eight or nine minutes.[2] Pl.'s Second Statement of Facts ¶ 3; DeAngelo Statement of Facts ¶ 3; Ex. 2 to

---

[1] The facts are taken from Defendants' Local Rule 56(a) Statements, Ms. Mehaylo's Local Rule 56(a) Statements, and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

[2] Ms. Senan and Ms. Mehaylo reported different descriptions of the conversation that occurred after the accident: Ms. Senan described the interaction as "strange and odd" and Ms. Mehaylo as erratic and aggressive, *see* Ms. Senan Dep. at 11:18–15:19, 16:16–17, whereas Ms. Mehaylo described the interaction as short and amicable, *see* Ms. Mehaylo Dep. at 41:6–14. In the police report, Officer DeAngelo also reported that Ms. Senan stated that she

Pl.'s Second Statement of Facts at 18:14–18, ECF No. 57-1 ("Ms. Senan Dep."); Ms. Mehaylo

Dep. at 44:3–52:9. Ms. Senan and Ms. Mehaylo returned to their respective cars, and Ms.

Mehaylo left because she believed Ms. Senan had everything she needed. Ms. Mehaylo Dep. at

41:6–14. Ms. Senan called the police and remained at the scene of the accident until they arrived.

Ms. Senan Dep. at 9:7–16.

Officer DeAngelo, of the Derby Police Department, arrived at the accident scene and

brought Ms. Senan to the Derby Police Statement where she gave an official sworn statement

describing the incident. *See* Derby Incident Rep. at 3. Officer DeAngelo remained with Ms.

Senan at least until she completed her signed statement at 8:24 p.m. *See* Ex. 3 to Pl.'s First

Statement of Facts, ECF No. 51-1 ("Ms. Senan Statement").

When Ms. Mehaylo returned home, she did not turn on any lights because she noticed

flashing lights on her street that she believed were coming from two ambulances parked outside

of her neighbor's house, as well as several police cars. DeAngelo Statement of Facts ¶ 10; Pl's

First Statement of Facts ¶ 10; Ms. Mehaylo Dep. at 54:7–18, 55:23–24.

At approximately 7:55 p.m., Officers Loris, Dominguez, and Chapman, of the Shelton

Police Department, arrived at Ms. Mehaylo's residence in Shelton to locate Ms. Mehaylo and her

car for charges related to leaving the scene of an accident. Loris and Dominguez Statement of

Facts ¶ 5; DeAngelo Statement of Facts ¶ 8; Pl.'s First Statement of Facts ¶ 8; Pl.'s Second

Statement of Facts ¶ 5.

Ms. Mehaylo recalls being confused about why there were so many police officers and

ambulances in her neighborhood. Ms. Mehaylo Dep. at 55:13–19. Ms. Mehaylo stated that there

_____

believed Ms. Mehaylo may have been "high or drunk," *see* Ex. I to Loris and Dominguez Mot. at 4, ECF No. 47-12
("Derby Incident Rep."), however, in her deposition, Ms. Senan stated that she didn't "want to speculate" about
whether Ms. Mehaylo was under the influence and did not recall smelling alcohol, *see* Ms. Senan Dep. at 16:13–19.

were lights shining toward her front windows, people calling her name, and men on all sides of her home, including someone "running around my house banging . . . shaking on the [back] door" and "somebody banging on [her] garage window." *Id.* at 58:25–59:9; DeAngelo Statement of Facts ¶ 11; Pl.'s First Statement of Facts ¶ 11.

Ms. Mehaylo, who stated she did not know what was happening outside, crawled from her living room into her sunroom to call her mother. Ms. Mehaylo Dep. at 59:19–22; DeAngelo Statement of Facts ¶ 12; Pl.'s First Statement of Facts ¶ 12. Ms. Mehaylo's mother let her know that the police were at her home. Ms. Mehaylo Dep. at 59:25–60:1; DeAngelo Statement of Facts ¶ 12; Pl.'s First Statement of Facts ¶ 12.

Ms. Mehaylo stated that once she knew it was the police that she knew she had to open the door. Ms. Mehaylo Dep. at 60:8–9. She asked the officers outside her front door why they were at her house and answered questions about her involvement in the earlier car accident through the closed wood front door, which required her to raise her voice. Ms. Mehaylo Dep. at 75:2–18; DeAngelo Statement of Facts ¶ 13; Pl.'s First Statement of Facts ¶ 13. Ms. Mehaylo agreed to open the wood front door as long as she could speak to the officers with the screen storm door between them. Ms. Mehaylo Dep. at 84:20–7; DeAngelo Statement of Facts ¶ 15 Pl.'s First Statement of Facts ¶ 15.

Once Ms. Mehaylo opened the front wood door, Officer DeAngelo opened the screen storm door, reached into Ms. Mehaylo's home, and grabbed Ms. Mehaylo's right arm to pull her out of her home and onto the front porch. Ms. Mehaylo Dep. at 85:8–10, 87:2–89:12; DeAngelo Statement of Facts ¶ 15; Loris and Dominguez Statement of Facts ¶ 9; Pl.'s First Statement of Facts ¶ 15; Pl.'s Second Statement of Facts ¶ 9. As she was initially grabbed, Ms. Mehaylo pulled back. Pl.'s Second Statement of Facts ¶ 11–13; Pl.'s First Statement of Facts at 3 ¶¶ 5–6;

Ms. Mehaylo Dep. at 85:8–18, 89:8–18. Once on the porch, Officer DeAngelo pushed Ms.

Mehaylo against the wall to secure her with her arms behind her back. Ex. B to DeAngelo Mot.

for Summ. J. at 2, ECF No. 46-4 ("Arraignment Rep.").

Officer Loris then grabbed Ms. Mehaylo's left arm, and Officer Dominguez came to

assist by holding Ms. Mehaylo's left arm while Officer Loris handcuffed her. DeAngelo

Statement of Facts ¶ 17; Pl.'s First Statement of Facts ¶ 17; Loris and Dominguez Statement of

Facts ¶¶ 10–11; Pl.'s Second Statement of Facts ¶¶ 10–11. The three officers picked Ms.

Mehaylo up and brought her from the front porch to a police car parked on the street. Loris and

Dominguez Statement of Facts ¶ 13; Pl.'s Second Statement of Facts ¶¶ 11–13, 3 ¶¶ 5–6;

DeAngelo Statement of Facts ¶ 19; Pl.'s First Statement of Facts ¶¶ 18–19; Ms. Mehaylo Dep. at

85:16–86:15, 92:5–22.

While Officer Loris attempted to grab Ms. Mehaylo's legs so they could pick her up, she

kicked backwards, and her foot made contact with Officer Loris' groin. DeAngelo Statement of

Facts ¶ 18; Pl.'s First Statement of Facts ¶ 18; Loris and Dominguez Statement of Facts ¶ 12;

Pl.'s Second Statement of Facts ¶¶ 11–13. At some point during the arrest, Ms. Mehaylo urinated

on Officer Dominguez. DeAngelo Statement of Facts ¶ 20; Pl.'s First Statement of Facts ¶ 20.

Once the officers reached the police car, still carrying Ms. Mehaylo, they threw her into

the back of the car on her stomach with her hands handcuffed behind her back and her head hit

the center console. DeAngelo Statement of Facts ¶ 21; Pl.'s First Statement of Facts ¶ 21; Loris

and Dominguez Statement of Facts ¶ 15; Pl.'s Second Statement of Facts ¶ 15.

Ms. Mehaylo was charged with two counts of Assault on a Public Safety Officer and one

count of Interfering with a Police Officer. Loris and Dominguez Statement of Facts ¶ 19; Pl.'s

Second Statement of Facts ¶ 19. Officer DeAngelo issued Ms. Mehaylo a misdemeanor

summons for Evading Injury and/or Property Damage. Loris and Dominguez Statement of Facts ¶ 20; Pl.'s Second Statement of Facts ¶ 20.

### B. Procedural History

On December 23, 2019, Ms. Mehaylo filed a Complaint alleging Fourth Amendment and state assault and battery claims. *See* Compl.

On February 27, 2020, the parties filed their Rule 26(f) report, *see* Rep. of Rule 26(f), ECF No. 16, and on March 9, 2020, the Court held a telephonic scheduling conference, *see* Min. Entry, ECF No. 19.

On March 3, 2020, Officers Dominguez and Loris filed their Answer to the Complaint. *See* Answer, ECF No. 18.

On March 9, 2020, the Court issued an initial scheduling order, *see* Scheduling Order, ECF No. 20, which has since been modified several times, *see, e.g.*, Order, ECF No. 23; Order, ECF No. 27; Order, ECF No. 36.

On February 23, 2021, Officers Dominguez and Loris moved for a discovery conference. *See* Joint Mot. for Disc. Conf., ECF No. 29. On February 24, 2021, the Court granted the motion and scheduled a discovery conference for March 10, 2021. *See* Order, ECF No. 30.

On March 10, 2021, the Court issued an order modifying the scheduling order again, in light of outstanding discovery issues. *See* Order, ECF No. 34.

On March 8, 2022, Officer DeAngelo filed a motion for summary judgment. *See* DeAngelo Mot.

On March 11, 2022, Officers Dominguez and Loris filed a joint motion for summary judgment. *See* Loris and Dominguez Mot.

On March 15, 2022, Officers Loris and Dominguez filed a motion to supplement the record in support of their motion for summary judgment, *see* Mot. to Suppl., ECF No. 48, which the Court granted, *see* Order, ECF No. 49.

On March 29, 2022, Ms. Mehaylo filed her opposition to Officer DeAngelo's motion for summary judgment and her Rule 56 statement of facts. *See* Mem. in Opp'n to DeAngelo Mot. for Summ. J., ECF No. 50 ("DeAngelo Opp'n"); Pl.'s First Statement of Facts.

On April 8, 2022, Ms. Mehaylo filed her opposition to Officers Loris and Dominguez's motion for summary judgment and her Rule 56 statement of facts. *See* Mem. in Opp'n to Shelton Defs. Mot. for Summ. J., ECF No. 56; Pl.'s Second Statement of Facts.

On April 21, 2022, Officers Loris and Dominguez filed a reply in support of their motion for summary judgment. *See* Reply to Resp. to Mot. for Summ. J., ECF No. 58 ("Loris and Dominguez Reply").

On May 12, 2022, Officer DeAngelo filed a reply in support of his motion for summary judgment. *See* Reply to Resp. to Mot. for Summ. J., ECF No. 59 ("DeAngelo Reply").

## II.  STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (first citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and then citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any

other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Defendants argue that Ms. Mehaylo's excessive force claim fails because the officers were using reasonable force in response to Ms. Mehaylo resisting arrest.

In the alternative, Defendants argue that even if the force was excessive, they are entitled to qualified immunity.

Finally, Defendants argue that the state law claims fail as well because their use of force was justified.

The Court will address each argument in turn.

### A.  The Excessive Force Claim

The Fourth Amendment prohibits the use of excessive force during arrests. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Determining whether the force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In making that determination, "[t]he reasonableness of a

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* (internal quotation marks omitted).

It is an objective standard that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396–97; *see also Elliott v. County. of Monroe*, 115 F. App'x 497, 498 (2d Cir. 2004) (noting that a reasonableness inquiry "must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether she actively resisted the arrest"). Courts also consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001) (internal quotation marks omitted).

As a result, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).

Officers Loris and Dominguez argue that their use of force was reasonable in response to Ms. Mehaylo's resistance because any use of force was in response to Ms. Mehaylo's resistance. *See* Loris and Mehaylo Mot. at 7. Additionally, Officers Loris and Dominguez emphasize that the only force that resulted in any injury was when she was thrown into the back of the police car. *See id.* at 7–8. Officers Loris and Dominguez argue that their force was necessary to "bring plaintiff under control and effectuate her lawful arrest" and therefore, was reasonable. *See id.* at

8. In support of their argument, Officers Loris and Dominguez cite to several Second Circuit courts "where summary judgment was granted on excessive force claims [with] far more egregious [facts] than the undisputed facts here." *See id.* at 8–10 (citing *Massaro v. Town of Trumbull*, 525 F. Supp. 2d 302 (D. Conn. 2007), *aff'd*, 323 F. App'x 68 (2d Cir. 2009); *Bauer v. Hartford*, No. 3:07-cv-1375 (PCD), 2010 WL 4429697 (D. Conn. Oct. 29, 2010); *Stanley v. Meier*, No. 3:09-cv-1643 (VLB), 2012 WL 2367386 (D. Conn. June 21, 2012); *Lagasse v. Waterbury*, No. 3:09-cv-391 (VLB), 2011 WL 2709749 (D. Conn. July 12, 2011)).

Officer DeAngelo similarly argues that Ms. Mehaylo's excessive force claims fail as a matter of law because Officer DeAngelo's use of force was objectively reasonable under the circumstances. *See* DeAngelo Mot. at 18. More specifically, Officer DeAngelo argues his use of force was reasonable because it was "applied in a good fair effect to maintain or restore discipline" in response to Ms. Mehaylo actively pulling away, kicking at officers, and resisting arrest. *See id.* at 19–20 (quoting *Johnson*, 239 F.3d at 251–52). Additionally, Officer DeAngelo argues that Ms. Mehaylo's claim fails because she cannot show that she suffered a compensable injury. *See id.*

In response, Ms. Mehaylo emphasizes that Ms. Mehaylo's initial offense was not violent, there was no evidence that Ms. Mehaylo herself had a history of violence, and, even if Ms. Mehaylo was resistant, the force used was unnecessary and therefore unreasonable. *See* DeAngelo Opp'n at 5–7; Loris and Dominguez Opp'n at 5–7. Ms. Mehaylo argues that it was unreasonable for the three male officers to use force instead of asking the female officer, Officer Chapman, to help deescalate the situation. *See* Loris and Dominguez Opp'n at 7. Ms. Mehaylo further argues that the cases relied upon in Officers Loris and Dominguez's brief are distinguishable because the cases either involved the police arresting an individual for a violent

11

crime or an individual who had a history of violence, because the plaintiffs failed to plead relevant facts or properly oppose the defendants' motions, or because the plaintiff had "lunged" at the arresting officers. *See id.* at 6–7.

Officer DeAngelo, in reply, argues that the force he used was reasonable because he needed "to use . . . force to handcuff the plaintiff, and the plaintiff's legs needed to be controlled to avoid further harm to the officers as well as to prevent the plaintiff from urinating on an officer again." *See* Loris and Dominguez Reply at 4. Officer DeAngelo also emphasizes that Ms. Mehaylo had already left the scene of the car accident, and, in his view, she had been evasive of the police once they arrived at her home. *See id.*

Officers Loris and Dominguez, in their reply, argue Ms. Mehaylo "engaged in arguably felonious conduct at the scene" when she urinated on an officer and when she kicked an officer. *See* Loris and Dominguez Reply at 2. Additionally, Officers Loris and Dominguez argue that Ms. Mehaylo left the scene of an accident after causing injury to Ms. Senan. *See id.* Officers Loris and Dominguez further argue that there is no support for the claim that they should have asked Officer Chapman to deescalate the situation and there is no evidence to suggest that Ms. Mehaylo would have cooperated if Officer Chapman had been more involved. *See id.* at 2–3. Officers Loris and Dominguez emphasize that Ms. Mehaylo was consistently resisting arrest and the force used was reasonable in response. *See id.* at 3–4.

The Court disagrees.

Defendants focus much of their argument on Ms. Mehaylo's resistance, however, "focusing only on resistance to the arrest . . . would disregard the three-factor analysis that the Supreme Court required in *Graham*" and "[e]ven resistance sufficient to result in conviction for resisting arrest does not preclude a finding of 'excessive force in effectuating the arrest.'" *Brown*

*v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). Therefore, the Court will begin its analysis with the first two *Graham* factors before discussing Defendants' resistance arguments.

First, considering the severity of the crime at issue, the officers were arresting Ms. Mehaylo for violating Connecticut General Statute § 14-224(b)(3), which is a criminal misdemeanor that is punishable by up to one year imprisonment and a fine between $75 and $600. Conn. Gen. Stat. § 14-224(g)(3). As a non-violent misdemeanor, a reasonable jury could find that this crime is not severe. *Cf. Passino v. City of Plattsburg*, No. 8:17-cv-1028 (FJS/DJS), 2020 WL 509129, at *3 (N.D.N.Y. Jan. 31, 2020) (finding that disorderly conduct and obstructing traffic, as well as the plaintiff's subsequent resisting arrest charge, a Class A misdemeanor, were "non-criminal violations and a non-violent misdemeanor" and therefore, "weigh[ed] in [the plaintiff's] favor").

Second, as to the threat to officer or public safety, there is no evidence that Ms. Mehaylo posed a threat to officer or public safety before Officer DeAngelo opened her screen storm door and physically pulled her out of her home. Ms. Senan reported Ms. Mehaylo for leaving the scene of an accident before the police arrived. *See* Ms. Senan Dep. at 9:7–16, 18:14–18; Ms. Mehaylo Dep. at 44:3–52:9. The accident itself was the result of Ms. Mehaylo hitting Ms. Senan's car going at most 20 miles per hour. *See* Ms. Mehaylo Dep. at 40:18–41:5. As discussed above, this could be considered a non-violent misdemeanor. There is no evidence that Ms. Mehaylo had a history of violence or had access to any weapons. Further, at the point Officer DeAngelo forcibly pulled Ms. Mehaylo from her home, she had been answering the officer's questions and had opened the front wood door. *See* Ms. Mehaylo Dep. at 75:2–18; Arraignment Rep. at 1 (noting that Ms. Mehaylo had been "yelling through the door" and she "stated that she

was involved in a motor vehicle accident in Derby and that she exchanged information with the operator of the other vehicle"). Under these circumstances, a reasonable jury could find that Ms. Mehaylo did not pose a threat when the officers initiated the use of force. *See Morse v. Fitzgerald*, No. 10-CV-6306 CJS, 2013 WL 1195036, at *10 (W.D.N.Y. Mar. 22, 2013) (noting that the plaintiff did not pose a threat where the plaintiff told the officers "through the closed screen door[] that he was not going to come outside since they did not have a warrant" and then tried to close the inner door).

Finally, there is a genuine dispute of material fact concerning the extent to which Ms. Mehaylo was resisting and whether the force employed in response was reasonable.

If Ms. Mehaylo was not resisting, using force to remove her from her home to arrest her may have been an excessive use of force. *See Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir. 1987) (holding that forcibly removing nonviolent plaintiff from her car could be excessive force); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618–19 (E.D.N.Y. 2013) (denying summary judgment where the officer "dragged [the plaintiff] from his vehicle, shoved him against it, and handcuffed him," in part, because the plaintiff was not resisting). This is particularly true where the plaintiff is also attempting to comply with the officers. *See Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) (finding that tackling and throwing the plaintiff up against a metal gate could be excessive force where the plaintiff had already arranged to voluntarily surrender).

Here, Ms. Mehaylo told the officers she would open the door, but that they could not come in because she did not fully understand why they were at her house. *See* Ms. Mehaylo Dep. at 84:20–25, 85:3–7 (stating that the officers agreed when she instructed them to "stand outside on the porch" while she "open[ed] the door" and that they could "talk through the storm door" to

"see what's going on"). Once Ms. Mehaylo opened the inner wood door, Officer DeAngelo immediately opened the screen storm door and physically pulled Ms. Mehaylo out of her home. *See id.* at 85:8–10, 87:2–89:12. Notably, Ms. Mehaylo claims that she was not given the opportunity to step outside herself and submit to being arrested. *See id.* at 95:7–17 ("I would have gone willingly if they hadn't pulled me out of the door . . . . If they said you left the scene of an accident, you've got to turn yourself in, I would have went."). Thus, Officer DeAngelo used force to remove Ms. Mehaylo, even though she was attempting to comply, and therefore, this could be considered excessive.

When Officer DeAngelo grabbed Ms. Mehaylo and began to pull her out, she responded by "pulling back" because that was her "natural" reaction and she was "trying to pull back to get insider [her] house." *See id.* at 85:8–14, 89:17–18. Officer DeAngelo then pushed Ms. Mehaylo against the wall on the porch to secure her. *See* Arraignment Rep. at 2. However, "[t]he fact that a person whom a police officer attempts to arrest resists . . . no doubt justifies the officer's use of *some* degree of force, . . . it does not give the officer license to use force without limit." *Sullivan*, 225 F.3d at 165–66.

In *Pal v. Cipolla*, similar to Ms. Mehaylo, the plaintiff answered the door to speak to the police. No. 3:18-cv-616 (MPS), 2020 WL 6881455, at *7 (D. Conn. Nov. 23, 2020). The plaintiff then retreated into her home but then an officer pushed her door open and forcibly pulled her out. *Id.* The plaintiff was "hanging onto the banister of the steps" just inside her home when the officer grabbed her. *Id.* (internal quotation marks omitted). The court denied summary judgment because there was a dispute about the amount of force the officer used to pull the plaintiff out of her home. *Id.* at *15 (noting the officers argued they "grabbed her upper arm and pulled her outside" whereas the plaintiff argued the officers "dragged her out of the house and

that her head and right side of her upper body were slammed against the door frame" (internal quotation marks omitted)). In the court's view, the plaintiff's resistance did not make the officers' use of force reasonable. *Id.*

Similarly, here, a reasonable jury could find that Officer DeAngelo's force was excessive, even though Ms. Mehaylo pulled back as Officer DeAngelo forcibly pulled her out of her home and pushed her against the wall.

Once the officers handcuffed Ms. Mehaylo, the extent of her resistance is not clear. Ms. Mehaylo states that she may have kicked Officer Loris inadvertently "because[,] as [she] was flipping upside-down maybe [she] was kicking as [Officer Loris] was trying to get [her] legs in his hands." Ms. Mehaylo Dep. at 94:10–14. The officers, however, state that Ms. Mehaylo kicked Officer Loris while he was adjusting her handcuffs and that, in response, due to her ongoing non-compliance, the officers decided to pick her up. *See* Ex. F to Loris and Dominguez Mot. at 1 ("Loris Use of Force Rep.") (stating that Officer Loris "began to adjust the handcuffs . . . when [Ms.] Mehaylo began to kick backwards striking [him] in the groin. . . . [Ms.] Mehaylo continued to pull away from [the officers], so . . . [the officers] carr[ied] [Ms.] Mehaylo to Officer DeAngelo's police car").

Based on Ms. Mehaylo's description, the "kick" is dissimilar to the type of resistance contemplated in other excessive force cases because she was lifted in the air and not in control of her body. For example, in *LaGrasse*, a case Defendants rely on in their briefing, the plaintiff had purposefully elbowed the officer causing bruising and several cuts, the officer instructed the plaintiff to stop resisting, and only then, when the plaintiff continued to elbow the officer, did the officer use force. 2011 WL 2709749, at *6–8. Similarly, in *Stanley*, another case cited by Defendants, the plaintiff had lunged at an officer twice and in response, the officer struck the

plaintiff twice to subdue her. 2012 WL 2367386, at *4–5.[3] Therefore, if Ms. Mehaylo's "kick" was accidental due to the officers lifting her in the air, a reasonable jury could determine that that was not, in fact, resistance that warranted the officers' force in response.

The parties also disagree about whether Ms. Mehaylo urinated inadvertently or if she threatened to and then did urinate on Officer Dominguez. Defendants claim that Ms. Mehaylo "yelled 'I'm going to pee on you guys,'" "wrapped her leg around Officer Dominguez's right leg and began to urinate." Loris Use of Force Rep. at 1. Ms. Mehaylo, however, claims that she did not wrap her legs around Officer Dominguez or threaten to urinate on anyone. *See* Ms. Mehaylo Dep. at 92:24–93:12. Ms. Mehaylo stated that she did urinate, but it was inadvertent. *See id.* at 92:13–22. If unintentional, it is not clear how the officers could have considered Ms. Mehaylo's urination an act of resistance, particularly because urination is a relatively common reaction in forceful arrests and is not a threat to officer safety. *See, e.g.*, *Kaminski v. City of Utica*, No. 9:10-cv-0895 (TJM/DEP), 2012 WL 4486074, at *22 (N.D.N.Y. June 28, 2012) (noting that plaintiff claimed "he was in such fear" during the arrest "that he urinated on the floor").

Even if Ms. Mehaylo intentionally kicked Officer Loris and intentionally urinated on Officer Dominguez, it is not clear that throwing her face first into the back of the police car was a reasonable use of force, particularly if the alleged resistance happened on the porch and if, by the time the officers' reached the police car, Ms. Mehaylo was no longer resisting.[4] Notably, the

---

[3] Defendants' other resistance cases are also contrary to the facts at issue here. In *Massaro*, the defendant officers knew the plaintiff previously committed crimes involving weapons and the Second Circuit expressly relied on this fact when it affirmed the lower court. 323 F. App'x at 70 ("[A] reasonable jury could not find by a preponderance of the evidence that the officers could not reasonably believe that the force used was an appropriate means of subduing a person whom they knew had previously been convicted of crimes involving weapons."). In *Bauer*, the only use of force involved the officers grabbing the plaintiff's arms too forcefully when they handcuffed her. 2010 WL 4429697, at *11.

[4] Officer Loris's use of force report states that Ms. Mehaylo continued to struggle until they reached the police car and "placed" her in the back seat. *See* Loris Use of Force Rep. at 2. Ms. Mehaylo repeatedly emphasized, however, that three officers were holding her in the air, and she did not have the ability to resist even if she wanted to. *See* Ms. Mehaylo Dep. at 91:13–23, 92:5–13, 94: 3–6.

Second Circuit recently held that an officer who "swung and jerked [the plaintiff] around by the handcuffs while she was cuffed from behind" and "shoved her head first into his police car, causing her head to strike the metal partition between the front and back seats" may have used excessive use of force. *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004). Therefore, the Court cannot determine on this record that the officers' use of force was reasonable.

The extent of Ms. Mehaylo's alleged resistance is also relevant to determining whether less aggressive alternatives were plausibly available. While the availability of a less aggressive way to arrest Ms. Mehaylo is not dispositive, "the availability of a much less aggressive technique is at least relevant" to the excessive force determination. *See Brown*, 798 F.3d at 103. If Ms. Mehaylo's resistance was minimal, there appears to be "no reason . . . why, with [the plaintiff] standing, each officer could not have simply held one of her arms, brought it behind her, and put handcuffs on her wrists," *id.* at 102, particularly because there were three male officers arresting Ms. Mehaylo, a 110 pound, 5'2" woman.

Finally, Ms. Mehaylo has presented sufficient evidence of injury. Ms. Mehaylo has presented evidence that, as a result of the officers' use of force, she was diagnosed with a concussion and post-concussion syndrome. *See* Pl.'s Second Statement of Facts at 4 ¶ 8; *see also Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y.2009) (holding that, to survive a motion for summary judgment, the plaintiff does not need long-term or documented injuries as a predicate to liability).

Therefore, "construing the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor," *Gary Friedrich Enters., LLC*, 716 F.3d at 312, as the Court must at this stage, a reasonable jury could credit Ms. Mehaylo's testimony and find

18

that the officers' use of force was excessive under the circumstances. *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342 (E.D.N.Y. 2006) (denying summary judgment where the officer hit the plaintiff after she verbally protested officers going upstairs to search for guns and again after she was handcuffed because the "officers initiated the use of force against plaintiff before she started to resist arrest" and "continued to use force against the plaintiff" even after she was subdued).

Accordingly, Defendants' motion for summary judgment will be denied on these grounds.

### B.  Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). A right is clearly established if, "at the time of the challenged

conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

Officer DeAngelo argues he is entitled to qualified immunity because "it was not clearly established that [he] could not use the force he used in light of the circumstances confronting him" and, even if clearly established, "it was objectively reasonable for an officer to believe that his use of force was" proper. *See* DeAngelo Mot. at 22.

Officers Loris and Dominguez argue they are entitled to qualified immunity because it was objectively reasonable for them to assist Office DeAngelo in making a lawful arrest. *See* Loris and Dominguez Mot. at 11. Additionally, Officers Loris and Dominguez argue it is undisputed that their use of force was "minimal and necessary to overcome [Ms. Mehaylo's]

violent kicks and assaultive urination." *See id.* at 12. Officers Loris and Dominguez emphasize that Ms. Mehaylo's "undisputed resistance and the safety risks posed by it" show that the officers' use of force to overcome her resistance was proper. *See id.* at 13 n.3.

Plaintiff, in response, emphasizes that qualified immunity is improper where there are disputed issues of material fact. *See* DeAngelo Opp'n at 11; Loris and Dominguez Opp'n at 7–8.

In his reply, Officer DeAngelo argues the undisputed facts show that Ms. Mehaylo was non-compliant throughout the arrest and therefore, his use of force was lawful. *See* DeAngelo Reply at 5.

Officers Loris and Dominguez, in their reply, argue the "facts regarding the limited use of force" and the "extent of plaintiff's resistance" are undisputed because Ms. Mehaylo later plead guilty to criminal charges for resisting arrest. *See* Loris and Dominguez Reply at 4.

The Court disagrees.

It is clearly established in the Second Circuit that "it [is] a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety." *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2018); *see also Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) ("On July 22, 2016, it was therefore clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting."); *O'Hara v. City of New York*, 570 F. App'x 21, 24 (2d Cir. 2014) (punching an arrestee without provocation was excessive force and there is a distinction between "struggling against" the officer's blows and resisting arrest); *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir. 1989) (concluding that a plaintiff's testimony about being immediately shoved to the floor upon answering an officer's door knock could defeat a motion for summary judgment as a matter of law); *Sash*, 674 F. Supp. 2d at 538

21

("Tackling an arrestee on the street and forcibly shoving him into a metal gate when he offers no resistance certainly could be actionable conduct.").

Here, as discussed at length above, the degree of Ms. Mehaylo's resistance, if any, and thus, the reasonableness of the force used in response are not clear from the record. Therefore, Defendants are not entitled to qualified immunity at this stage. *See Mills v. Fenger*, 216 F. App'x 7, 8–9 (2d Cir. 2006) (citing *Thomas*, 165 F.3d at 143) ("Because whether force is excessive turns on its reasonableness, we have held that '[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.'" (citation omitted)). Additionally, as discussed previously, "[e]ven resistance sufficient to result in conviction for resisting arrest does not preclude a finding of 'excessive force in effectuating the arrest.'" *Brown*, 798 F.3d at 102 (quoting *Sullivan*, 225 F.3d at 166).

Accordingly, Defendants' motion for summary judgment will be denied on these grounds.

### C.  The State Law Assault Claim

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to him and that the application of force or violence was unlawful." *Ochoa v. City of W. Haven*, No. 3:08-CV-00024 (DJS), 2011 WL 3267705, at *10 (D. Conn. July 29, 2011) (alteration omitted) (internal quotation marks and citations omitted). If, however, "the officer's actions are justified [under Conn. Gen. Stat. § 53a-22(b)], he is not liable in tort for assault or battery." *Margolies v. Millington*, No. 16-cv-1872 (JCH), 2019 WL 1110793, at *6 (D. Conn. Mar. 11, 2019).

Under Conn. Gen. Stat. § 53a-22(b), an officer is

> justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary

22

> to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

Defendants argue that, because the amount of force used in this case was objectively reasonable, and therefore lawful, the assault and battery claim necessarily fails. *See* DeAngelo Mot. at 23–24; Loris and Dominguez Mot. at 14–15.

The Court disagrees.

Because the Court has concluded that there are genuine and material factual disputes regarding whether Defendants used excessive force in effectuating Ms. Mehaylo's arrest, their motion for summary judgment also will be denied as to the claims of assault and battery. *See Orell v. Muckle*, No. 3:11-CV-00097, 2012 WL 3231017, at *6 (D. Conn. Aug. 6, 2012) (denying summary judgment on assault and battery claims on the basis of unresolved factual disputes regarding excessive force claim); *see also Outlaw v. City of Hartford*, No. 3:07-cv-01769, 2015 WL 13646918, at *1 (D. Conn. 2015) ("The essential elements of a Fourth Amendment excessive-force claim and a state-law assault-and-battery claim are substantially identical." (citing *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991))), *aff'd* 884 F.3d 351 (2d Cir. 2018).

## IV.   CONCLUSION

For the foregoing reasons, Officers Loris and Dominguez's motion for summary judgment is **DENIED.**

Officer DeAngelo's motion for summary judgment is **DENIED**.

SO ORDERED at Bridgeport, Connecticut, this 18th day of November, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE